Mr. Anthony. Thank you, Your Honor. Good morning, Your Honor. I'm Mr. Anthony and I represent Deere & Company. I would like to reserve five minutes of my time. I tried the case with Mr. McKelvey, and if you agree with Mr. McKelvey's arguments, my position here will become irrelevant. I'm here to argue the costs appeal. Deere appeals Judge Woolley's taxation of costs against Deere on a number of items because the judge's position in trying to support that ruling is contrary to the law as is reflected in essentially a tide of cases, particularly since 2012. There's essentially a watershed in the law interpreting Section 1920 parenthesis. Would you say the law is becoming more expansive in allowing taxable costs? I would say the opposite. I would say the law is becoming in light of the Taniguchi decision, which interpreted a different subsection of Section 1920 of Title 28 and cases that have come out slightly before the Taniguchi decision of the Supreme Court and since then. There's been a growing recognition that the categories of costs that are taxable, including particularly costs relating to ESI, electronically stored information, trial technologists, and the cost of making copies are narrowly defined. The Taniguchi decision, of course, concerned a different subsection of that statute relating to the definition of interpreters, but it's instructive what the Supreme Court concluded in the Taniguchi case because the Supreme Court cautioned that costs that are taxable under Section 1920 are intended to be narrow in scope, that are limited to relatively minor incidental expenses. Wasn't it just talking or addressing their copying costs in Taniguchi? Well, no. In Taniguchi, it was addressing the costs of interpreters, and so defendants have argued to this court that Deere's reliance on Taniguchi shouldn't be taken very seriously because that was a case of the Supreme Court that dealt with a different provision of the statute, and we disagree because we think that that's not really ascribing appropriate deference to a decision of the Supreme Court. The Supreme Court's decisions really, unlike the decisions of intermediate federal courts, often are because the Supreme Court's limited docket often set forth standards that the lower courts apply without limiting a case to its particular facts. But it's not just Taniguchi. That, I think, has influenced the law going forward, but there's an entire line of cases in a number of circuits, exemplified most notably by the Third Circuit's decision in a case called Race Tires. Race Tires actually came out a couple of months before Taniguchi, but many courts have observed that the Race Tires approach, which was to be very limited about the categories of costs that are covered by Section 1924. Is Iowa in the Eighth Circuit? No, Race Tires is the Third Circuit. No, Iowa. I mean, we're in the Eighth Circuit. Yes, Your Honor, I apologize. What about Slag and Wit? Slag and Wit is a case that came down considerable length of time prior to the Taniguchi decision. Slag and Wit goes back all the way to 1995 and essentially approves the taxation of costs for a deposition. It gives broad discretion to the district court to assign taxable costs, doesn't it? It does, but I don't believe that would be the position of the Eighth Circuit were it to consider the case law today. Well, that raises a question that I'd like your advice on, which is what is our standard of review over this cost decision? Okay, so there's two parts to it. First, you have to determine whether the categories of costs that the defendant sought and the court awarded can permissibly be comprised within Section 1920, Parenthesis 4, and that's a matter of statutory interpretation. That's a decision that's made on a de novo basis. Second, if and only if this court determines that these categories of costs can be taxable, and we maintain they are not, then and only then would you go to the second step, which would be to say, was the district court's taxation of them an abuse of discretion? We don't even get there, because we're still at the first step of statutory interpretation. And support for my framework that I just gave, Your Honor, is in this circuit's case in Enrique Rico, which sets out those two steps. So while it is true that defendants, in their briefs, argue very strongly for the exercise of discretion here, we respectfully maintain that this is a matter of statutory interpretation. And you don't even get to the discretion. The Eighth Circuit in Slag and White construed Section 1920, and you're telling the court that that's an old case and there's been law since then. So what about Stanley v. Cottrell? That's also an Eighth Circuit case. It's decided this year, and it seems to me that it gives pretty broad discretion to the district court as well. In fact, in that case, all taxable costs were upheld. I agree that the district court is entitled, Your Honor, to an exercise of discretion. But it is still the case, nonetheless, under Taniguchi and under the widely applied standards that are applied in a growing number of circuits, that the district court does not have discretion to award costs that are not covered by the statute. The discretion is the second step. So there are cases in which appellate courts, including the Eighth Circuit, have emphasized the discretion of the district court. But that doesn't get you past the question of what is the interpretation of statutory terms. So what are we talking about? The terms exemplification, the term making copies, and the term necessarily obtained for use in the case. Just to be clear, Mr. Anthony, if we should disagree with your reading of the statute and come to the conclusion that the district court was, under the circumstances, within the statutory ambit, then you lose, is that right? Because he has the discretion at that point. We think on this record this court could find an abuse of discretion. But our argument in our briefs, and my argument before you, Your Honor, is that Judge Woolley taxed costs that are not covered by the statute. But let me say a further thing. I understand your point, but you're not answering my question. Or maybe you did. Basically, his breadth of discretion would cover what he did if he had the authority to do it. Is that fair? For some of these costs, yes, but not all. And one example I would give of that, Your Honor, is with regard to hosting and storage costs. So our argument, as I've said, is they're not covered by the statute. But I understand Your Honor is asking me, what about the discretion point? Well, the clerk of the court, and therefore Judge Woolley, in following the clerk of the court, handled storage costs two different ways, for two different phases in this case, for no reason. And the two phases were the period of time prior to this court's previous opinion in this case, and then the period of time after remand for the trial that Mr. McKelvey described to you. The court awarded storage costs, that is, these are monthly server fees that lawyers pay to companies that store data, for the previous period, before the previous appeal. But then, for the second period of time, the clerk, recognizing that there was a local district court decision called Hallmark that disallows that, the district court disallowed it for the second period of time. Now, on appeal, the defendants, in particular Great Plains in its brief, argues, well, there you go, that's an exercise of discretion. The court said, sometimes they get them, sometimes they don't, that's a matter of discretion. And we argue, that's not even conceivably a valid exercise of discretion. That's an abuse of discretion. If treating like situations differently, without a reason, is the very picture of an abuse of discretion. So, if the court was right, the clerk was right in allowing costs for the pre-storage, they're entitled to costs for the post-storage, is that what you're arguing? It's not what I'm arguing. It won't surprise you to know I'm arguing the opposite of that. So, just to be clear, our argument is that those storage costs are not taxable under the statute to begin with, but surely it is an abuse of discretion to give them for one period of time and not for another. So, while I understand the court to be focusing very much on the district court's discretion, I would really urgently direct this court to the number of cases we've cited in our briefs, including, among other things, decisions of the lower courts within the Eighth Circuit. Cases like the Amana Society case, I've mentioned the Hallmark Cards case, and there's also one called Chavis Van that emphasize in the sort of post-2012 world that there are very limited categories of costs that can be awarded. And it's not always intuitive. It's tempting to think that, for example, any costs associated with electronically stored information, or ESI, are somehow related to copying, but the court's decisions in numerous circuits, the Third Circuit decision in race tires, the Fourth Circuit's decision cited in our brief, have made clear repeatedly that making copies is actually a limited category of items. So, in race tires, the court points out there's essentially five steps that are associated with the so-called ESI, collecting and preserving the data, processing and indexing the data, keyword searching the data. Those three steps under race tires, those are not taxable. Only the latter two steps of converting electronic files to an agreed format, such as TIFF, and scanning paper copies are chargeable. So, under race tires, and also the Fourth Circuit's decision in Country Vintner, a case I was struggling to remember the name of a moment ago, and a number of decisions of the lower courts in the Eighth Circuit since 2012, those preliminary steps, which can be very, very expensive, are not taxable. They may be important, and decisions of a number of courts have recognized that these may be things that lawyers have to do in order to make the discovery readily searchable or usable or practical, but that does not make them taxable costs. What race tires and the vast majority of decisions since makes clear is that the really only costs that are associated with the act of copying, sort of the functional equivalent of copying paper documents, are taxable. I'd like to reserve the remainder of my time left for questions. Okay. Thank you, Mr. Anthony. Mr. Hetch? May I please report? Scott Haney on behalf of the Appleese. Unsurprisingly, Your Honor, we disagree with Mr. Anthony's characterization of Taniguchi as being a watershed event. It's true that courts have, throughout the years, exercised their discretion in awarding costs, and in doing so have analyzed the scope of 28 U.S.C. section 1920 subparagraph 4. And kind of in support of that argument, if you look at the Supreme Court's ruling in Crawford Fitting, which was a 1987 case, the court in that case argued that the discretion given district judges by Rule 54D, which is the federal rule allowing the award of costs to prevailing party, the tax costs should be sparingly exercised with reference to expenses not specifically allowed by the statute. And they're referring to the statute, 1920 subparagraph 4, which is at issue in this case, which relates to two categories of costs, one of which is exemplification and the other which relates to making copies. The cases that Deere relies on post-Taniguchi, post-2012, one of which is in-rate country vendor, that's the Fourth Circuit case that Mr. Anthony mentioned, as well as race tires, those cases are distinguishable on the fact that there was no ESI agreement in those cases. In those cases, the parties just produced documents without any specification as to, for example, the specific types of metadata. How many ESI agreements were reached in this case? There's one ESI agreement, Your Honor. And it guided the entire litigation? Yes, Your Honor. Both the prior to appeal to us and then afterwards? Yes, Your Honor. The only new party post-remand was my client, Alamo Incorporated. They were added to the trial roughly eight months before trial, and moving forward in the case, we got a copy of the ESI order from the original case and proceeded according to it. So there was one order, and that said part of the record at A1281. It's an email from counsel for Deere to the various counsel for the other defendants memorializing the final agreement between the parties. Mr. Haney, even if we were to agree with your view that statute should be broadly read, how do you respond to Mr. Anthony's point about the discontinued storage? The storage costs, Your Honor? Yes. Well, respectfully, the defendants do indeed concede that there were some storage costs that were awarded based upon this court's decision at CBT Flint in which Judge O'Malley wrote his sentence. But the majority decided that stage two discovery costs, and that would relate to costs related to storage, deduplication, and the like, should not be recoverable. There's also a case in the Eighth Circuit Hallmark Cards suggesting the same. So we would concede that certain of these storage costs that were awarded to the defendants in the district court case should not have been awarded. How about project management support or the base numbering? Your Honor, I believe that the prevailing case law would suggest that in the invoices that I've reviewed, the project management in and of itself would not be awardable as a cost. However, if that was involved in database setup, for example, in stage one when the hard drives from the custodians of the different parties were being imaged in the database setup, those costs would indeed be recoverable under CBT Flint. Now, if it were just project management, for example, maintaining the database during like a stage two situation where they're just monitoring, deduplicating, culling documents for privilege, those costs would not be awarded. So I think it's a situational awareness type issue where if it was during stage one framework where you're actually copying, scanning, extracting metadata, those would be awardable. If it was stage three where the vendor was preparing those documents to be copied to a CD to be delivered, for example, to Deere as part of a document production, those would be awardable. If it was stage two, they would not under this court's law and under the Eighth Circuit. Mr. Henry, for reasons I won't go into, I'm just not inclined to go through all the fillings item by item in this case. I understand, Your Honor. Now, are there any, if Mr. Anthony were given the time, but we all have to be at dinner sometimes, are there any other concessions you would like to offer up that would expedite the outcome of this case? And should we rule in your favor, which I'm not declaring we're doing by any means. Your Honor, the storage costs are the primary costs to which defendants would concede. I think there are a few more on the copying front, and I can read you the record numbers that defendants would concede on. Please don't. Yes, Your Honor. And that would relate to, for example, copies from pages of anatomy of the patent case. I think that Deere mentioned in their clinical brief at pages seven through nine. And then charges for books on agricultural equipment. Those would be the other two copying items that defendants would concede on. One of the things that we often notice in the arguments about costs is that it must be costing somebody much more than could conceivably be recovered if we were to change the system. And this starts to look the same way, I gather you have not formally produced a revised cost presentation. Is that right? We have not, Your Honor. Not since the case was decided by the jury. I assumed you all were pro bono on this cost business. Perhaps I'm mistaken. Unfortunately, no, Your Honor. Regardless, Your Honor, I think that the cases are clear. Courts, both at the Eighth Circuit and at the Federal Circuit level, have awarded costs for copying. In fact, the case that Deere relies on, NRA Country Vendor, cites to both race tires and NRA RICO patent litigation, which was this court's case, suggesting that if there was indeed an ESI agreement in place, that those costs could be allowable as the cost of making copies. So we are entering a more modern age in which copying is no longer taking a hard copy from a custodian's office and running it through the copy machine. Instead, more and more we're going towards electronic discovery, which has obviously presented this court and many courts problems with where do you draw the line. But I think that line drawing has been done. I think courts are adhering to the admonishments from Taniguchi, are narrowly interpreting the statute. This court did so in CBT Flint by removing the possibility of awarding costs for Stage 2 document discovery for the Sedona Conference. And lower courts are doing the same. Mr. Anthony cited to the Chavis Van case as being in support of Deere's position. You're saying that since there's an element of discretion to leave it alone, but you're also telling us that there was an overreaching, a misstatement as of costs. What's your proposal to remedy all this? My proposal, Your Honor, would be that the defendants in the district court case, the appellees here, would submit to Deere a list of the items that they think should not have been awarded from a storage cost basis. We would present that to the clerk of the court at the district court. Would that include the copy charges that you mentioned? Yes, Your Honor, as well as those copy charges. And we would withdraw our demand for those costs. But you're right, Judge Newman, the court did exercise this discretion just as an example, my client, Alamo, submitted a receipt for copy charges, which the court reduced by 50% because he didn't feel like the invoice was sufficiently explanatory of what those charges encompassed. There's no discretion to commit an error. That's correct, Your Honor, that's correct. The other costs of reward in the case clearly fall within the statutory confines of Section 1927, Paragraph 4, and the court did not abuse its discretion in awarding those costs. We would simply concede to correct what we interpret to be an overreaching demand on our part for these storage costs. And then we'll see you both back here arguing about what's left? Hopefully not, Your Honor. Hopefully we can continue to agree on that. Okay. All right. Thank you, Mr. Haney. Unless there are any more questions. Mr. Anthony? Thank you, Your Honor. Any chance of the two of you working this out? Or perhaps you can try and figure this out after the argument. I don't think so, but I appreciate the court's suggestion and I'll take that up with our client. But I'll say this. I think Mr. Haney's concessions, admirable in this court, illustrate a little bit of the way we were treated in the district court. We made these arguments in front of Judge Woolley in the district court. So I would append this argument to the argument made by my law partner and trial partner, Mr. McKelvey, about the way we were treated in the district court. These very items that Mr. Haney, with admirable frankness, has acknowledged that were inappropriate were items we challenged and Judge Woolley taxed us on. One footnote. Mr. Haney cited a federal circuit case, CBT, Flint Partners, and it's thoroughly briefed. I would just note that that, by terms, goes off on a particular provision and principle of 11th Circuit law, which would not apply here, so it's distinguishable. But I want to add one thing because Mr. Haney talked about the ESI agreement. And that's an important point, and it's argued in the party's briefs. An ESI agreement is not the same thing as a cost-shifting agreement. They're very different, as the courts have recognized. And one of the cases cited in our brief, a couple of cases, the Plantronics case in the Northern District of California and the Life Plans case in the Northern District of Illinois have recognized this because it is one thing to say that the parties have reached some kind of an agreement on how a portion costs, which happens in some cases, for example, the In-Ray Rico case in the federal circuit. It is another thing entirely where you have a situation, as in the Deere v. Bushhawk case, where there's simply an ESI agreement. That is not a cost-shifting agreement. And properly understood, the law in this area, including under race tires and its progeny, recognizes that that's not the same thing as an agreement by the parties to allocate costs. It's an agreement as to how the parties have agreed the guidelines for electronic discovery. Yes. So those are, then you agree that these guidelines, anything that's done under these guidelines, is subject to the ESI agreement. Yes, but that's not the same thing as making it taxable, because just because it's in the ESI agreement, this or any other ESI agreement, does not make all those activities making copies. And race tires and country vintner and all the cases under them, these are not just random Third and Fourth Circuit cases we're citing. These cases really represent the tide of decisions in the federal courts. Mr. Anthony, you got hit with a bill that costs for almost, what, $600,000? Correct, nearly that. Just curious on my part, do you have any idea how that stacks up with cost assessments in other kinds of cases like this? Is this extraordinary or is this pretty typical? It's high, and it stacks up. You know, there are some cases that are relied on our briefs. The Summit Technologies case in the Federal Circuit in 2006 refers to the idea that the fact that a case is particularly complex does not give the prevailing party unchecked right to collect nearly $400,000 in cost. That was several years ago, I acknowledge. But to answer the court's question, there are several decisions that are cited. From your personal experience in the courtroom, how does this look? Is it pretty typical? It's not a typical award of costs. And I'm not evading your question, Judge Plager. There's a difference between how much it costs to try a case and what are taxable costs under 19-20 paren 4. Huge difference. And in fact, the Supreme Court's decision in Taniguchi makes clear that what is considered taxable costs under Section 19-20 is a teeny, I think the Supreme Court wrote, a fraction of the non-taxable expenses borne by litigants. So there's an acknowledged very limited scope of Section 19-20. Section 19-20 isn't, all right, what goes on the bill to a client that shows disbursements. There are plenty of costs that lawyers incur that are important, useful, helpful in presenting evidence to the courtroom, helpful to the litigants, that are not taxable. And race tires illustrates that. The Plantronics case makes that very clear. And so there's a, because the definition isn't just anything necessary for use in the case. It's the cost of making copies necessary for use in the case. And making copies is itself a narrowly defined term as the case itself in our brief established. Okay, thank you. Now, on the assumption that there will be some change in your relative positions, we need to be advised of all of that. How much time, is two weeks enough? Too much? If I could just have both people. If you'll both let us know where things stand in a couple of weeks, we'll wait for your communication. Confer with your client and I guess let the court know is what Judge Newman is asking. Very well. At least whatever changes you can agree upon. Two weeks is fine for me. Okay. Thank you both. The case is taken under submission. Thank you.